CIACCIO, Judge.
Defendant, Harold Bryant was charged with two counts of distribution of cocaine. La.R.S. 40:967(A)(1). He was found guilty of one count of distribution of cocaine following a jury trial. He thereafter pled guilty to the second count. Defendant was sentenced to serve two consecutive five year prison terms at hard labor. He was also fined $1,500.00 on each count, in default thereof he was ordered to serve an additional year imprisonment at hard labor. Defendant appeals his conviction and sentence alleging five assignments of error. We affirm the conviction, amend the sentence and as amended it is affirmed.
The record reveals the following:
In 1984 an undercover operation into drug trafficking was being conducted in Plaquemines Parish. On October 26, 1984, Officers Carmell Lovoi and Arethea Bou-dreaux, along with a confidential informant, went to a trailer to purchase cocaine from a man named “Dallas.” Dallas indicated that he did not have any cocaine and told them “to see Harry in Empire”. Because of the new development, Lovoi and Boudreaux reported back to their supervisor, Chief Dominic R. Verdi, who instructed them to allow the confidential informant to go home and then to proceed to Harry’s trailer in Empire. At Harry’s (the defendant’s) trailer, Lovoi asked Harry “could we have a couple of G’s” (meaning two grams of cocaine). The defendant responded affirmatively and instructed Lovoi to meet him at the Amoco gas station by the bridge in Empire.
The officers proceeded to the Amoco station and Harry arrived a short time later. Harry gave Lavoi two aluminum foil packages containing a white powder in exchange for $100.00. Boudreaux watched the transaction from the car. After completing the transaction Lovoi and Bou-dreaux started back to the Belle Chase lockup but their automobile developed engine trouble. They radioed Verdi and Delaney and arranged to meet them at a Gulf service station in Belle Chase at which time Lovoi gave the narcotics to Delaney. After the officers finally arrived at the Belle Chase lockup Delaney gave the narcotics to Chief Verdi who secured the evidence under lock and key. Subsequent testing confirmed that the white powder was cocaine.
The defendant took the stand and stated that he did not understand what Lovoi meant when she asked “did I have a couple of G’s”. He stated that he told her he was going to the gasoline station, and when he arrived there, he saw her. She asked him for cocaine and he responded he “didn’t mess with the stuff.” He stated that he asked for change of a $50 bill, and she gave it to him.

Assignment of Error No. 1

The defendant by this assignment of error, argues that the cocaine was inadmissible at trial because the State did not establish a chain of custody and properly identify the substance.
*496 In State v. Sweeney, 443 So.2d 522 (La.1983), the Louisiana Supreme Court discussed the criteria for admitting evidence at trial. The Court stated at 528:
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. Drew, 360 So.2d 500 (La.1978). The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972).
At trial, Officer Carmell Lovoi testified that after purchasing the cocaine, she dated and signed a slip of paper and placed the paper and the cocaine in a bag. She stated that the nature of the drugs' packaging did not allow her to write directly on the cocaine packets. She gave the cocaine to Agent Delaney at the Gulf filling station in Belle Chase. At the police station, Officer Lovoi signed an evidence envelope listing the date, time and defendant’s name. The evidence was introduced at trial in the same envelope. Officer Lovoi testified that she readily recognized the cocaine as that obtained from the defendant as it was packaged in a peculiar manner she had never observed in any other drug transaction.
Although at one point Officer Arethea Boudreaux testified that Lovoi gave the cocaine to Officer Dominic Verdi instead of Officer William Delaney when the four met at the Gulf station in Belle Chase, she later stated that she could not remember to which of the two men Lovoi had given the cocaine. She stated that Lovoi may well have given the cocaine to Delaney who then gave it to Verdi. She also testified that the cocaine was identifiable due to its particular packaging and that she had never seen cocaine packaged in that fashion.
Officer Delaney testified that Lovoi gave the drugs to him and that he then gave them to Verdi. Officer Delaney identified the preferred cocaine as that given to him by Officer Lovoi.
Chief Verdi testified that he received the cocaine from Officer Delaney at the lock up. He stated that after he ran an initial field test, he placed the cocaine in the dated and signed envelope which was later presented at trial. After the field test, Verdi brought the envelope to the New Orleans Police Department’s crime lab for further analysis to be performed by Officer Daniel Waguespack, a crime lab expert. Verdi personally retrieved the cocaine from the crime lab after the tests were completed and placed it in a fireproof file where it remained until trial.
Waguespack confirmed that he received the cocaine from Verdi on the date Verdi stated, December 6, 1984, and that he placed it in the police safe, after testing, until it was picked up by Verdi. He was qualified as an expert and at trial he positively identified the substance as cocaine.
Under these circumstances the State established a continuous chain of custody of the prohibited substance from the time of its purchase until its presentation at trial. The illegal substance presented at trial was established by expert testimony as being cocaine.
For these reasons assignment of error No. 1 lacks merit.

Assignment of Error No. 2

The defendant, by assignment of error No. 2 argues that the court’s questioning of a witness and the defendant constituted an improper comment upon the evidence.
Louisiana Code of Criminal Procedure Article 772 prohibits a judge, in the presence of a jury, from commenting upon the facts of the case.
The late Justice Tate of the Louisiana Supreme Court in State v. Williams, 375 *497 So.2d 1379 at 1381-1382 (La.1979) discussed the limitations of this codal article:
The no-judge-comment rule is designed to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. State v. Hodgeson, 305 So.2d 421 (La.1974) and decisions there cited. Thus, if the effect of a question or comment is to permit a reasonable inference that it expresses or implies the judge’s opinion as to the defendant’s innocence or guilt, this constitutes a violation of the defendant’s statutory right to no-comment and thus requires reversal. State v. Green, 231 La. 1058, 93 So.2d 657 (1957). Likewise, any comment or question by the judge expressing or implying his opinion with regard to a material issue is reversible. State v. Hodgeson, 305 So.2d 421, 421 (La.1974) (summarizing decisions).
The no-comment rule does not bar a trial judge from asking clarifying questions in the presence of the jury; nevertheless, in the exercise of this power, the judge’s question must be cautiously guarded so as not to constitute an implied comment. State v. Nicholas, 359 So.2d 965 (La.1978). The judge may even question a witness as to a material matter which has been omitted, providing he does so in an impartial manner and conducts his examination in such a way that he does not indicate his opinion on the merits or any doubt as to the credibility of the witness. State v. Groves, 311 So.2d 230 (La.1975). See, generally, Joseph, Work of the Appellate Courts in 1974-75-Criminal Trial Procedure, 36 La. L.Rev. 605, 624-26 (1976).
During the trial the judge questioned Officer Boudreaux concerning the events which transpired between Officer Lovoi and the defendant as she observed them from her position inside the undercover car. The defendant voiced no objection to the court’s line of questioning. He was allowed to and did question the witness on the basis of the testimony elicited by the court. Considering the substance of the defendant’s objection, we conclude that it is meritless. That is, the judge did not elicit new testimony from this witness. Rather, his questions merely clarified what the witness had testified to on direct and cross examination. As such, these questions did not constitute a comment on the evidence by the judge.
The defense counsel also contends that the court’s questioning of the defendant as to whether he knew any reason why the police would single him out as a target and want to bring charges against him was improper in that it resulted in the jury concluding that the Judge had formed an opinion against the defendant’s innocence. Again the counsel for the defendant did not object to the court’s questions. He was given an opportunity to question the defendant concerning the Court’s inquiry but the opportunity was declined.
Considering the substance of the defendant’s objection we also find it to be without merit.
In this case the defendant testified that he did not know why he had been solicited for the sale of drugs as he did not “mess with” cocaine and he inferred that he was “framed” or “set up” by the police. As such, the judge’s questions as to the defendant’s thoughts concerning why he was singled out for the transaction constitute an impartial inquiry concerning a material matter which was omitted during the defendant’s testimony. As such this questioning did not constitute a prohibited comment by the judge upon the evidence. C.Cr.P. Art. 772. State v. Williams, supra.
This assignment lacks merit.

Assignment of Error No. 3:

The defendant, in assignment of error No. 3, argues that the evidence indicates that the charges of distribution of cocaine resulted from entrapment.
Entrapment occurs when a criminal design originates with the government official and is implanted into the mind of an innocent person who does not otherwise have the predisposition to commit the offense charged. Sorrells v. U.S., 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); State v. Batiste, 363 So.2d 639 (La.1978).
*498 In this case the record reflects that the undercover policeman merely asked the defendant if she could purchase some cocaine and he complied by selling her the substance. This activity is not such an inducement as would supplant the defendant’s free will, rather this compliance by the defendant to the inquiry by the law enforcement official evidences the defendant’s own predisposition to commit the offense. The defense of entrapment is not applicable to this set of facts and as such, this assignment must fail.

Assignment of Error No. h

In assignment of error No. 4, defendant argues that his sentence is excessive. He was sentenced to serve two consecutive five year prison terms and fined $1,500 on each count and in lieu of payment of the fine he was to serve an additional year at hard labor.
Those who distribute a schedule II controlled dangerous substance shall be sentenced to serve not less than 5 years nor more than 80 years imprisonment at hard labor and be fined not more than $1,500. La.R.S. 40:967.
A sentence, although within statutory limits, may nonetheless be unconstitutionally excessive if it is “grossly out of proportion to the severity of the crime” or “is nothing more than a purposeless and needless imposition of pain and suffering.” State v. Brogdon, 457 So.2d 616 (La.1984), cert. den. 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). In imposing sentence the trial court is required to consider aggravating and mitigating factors so as to particularize the sentence to the offender and the offense. State v. Davis, 449 So.2d 452 (La.1984).
In this case the court reviewed in great detail the aggravating and mitigating factors involved. The judge thereafter sentenced the defendant to the minimum prison term on each count and the maximum fine under the statute. Such a sentence was within the sound discretion of the trial judge and is not excessive. Additionally, the decision that the sentences be served consecutively is justified as they arise from more than one transaction. La.C.Cr.P. Art. 883. For these reasons, this assignment lacks merit.
We do note, however, that at the time of this appeal the defendant is indigent. As such, he cannot be sentenced to additional jail time for failure to pay the fines imposed. State v. Ellzey, 496 So.2d 1090 (La.App. 4th Cir., 1986); State v. Barnes, 495 So.2d 310 (La.App. 4th Cir., 1986). Accordingly, the defendant’s sentence is amended to delete the imposition of a one year jail term in default of payment of the fine of $1,500 on each count.
As amended the sentence is affirmed.
For the reasons assigned the defendant’s conviction is affirmed. The defendant’s sentence is amended and affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED and AFFIRMED.