715 So.2d 547 (1998)
STATE of Louisiana
v.
Richard SMITH and Corey Esquerre.
No. 96-KA-2161.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1998.
*548 Harry F. Connick, District Attorney, Joseph E. Lucore, Assistant District Attorney, William L. Jones, III, Law Clerk, New Orleans, for Appellee.
Archie B. Creech, Orleans Indigent Defender Program, and Sherry Watters, Louisiana Appellate Project, New Orleans, for Appellant.
Before BARRY, BYRNES and WALTZER, JJ.
BYRNES, Judge.

STATEMENT OF THE CASE
A six person jury found the defendants guilty as charged of one count each of possession of cocaine, a violation of La. R.S. 40:967. At the subsequent multiple bill hearing the court heard expert testimony to establish identity of each defendant and found Esquerre to be a second offender and Smith to be a third offender. A sentence of forty months at hard labor was imposed on Smith. The court imposed a sentence of thirty months at hard labor on Esquerre; his sentence was later amended to run concurrently with all other sentences.
Both defendants appealed. We affirm.
On July 19, 1995 at approximately 9:15 a.m., Officers Harry O'Neal and Michael Montalbano of the Second District were on routine patrol in the Gerttown area of New Orleans. The officers were in plain clothes but in a marked police car. They were specifically looking for street-level narcotics activity in the area of the intersection of Pine and Olive Streets, an area known for crack cocaine distribution and in which Officer O'Neal had made 300-400 arrests in the prior three years, the majority of which were for narcotics.
As the officers were proceeding on Olive Street near Lowerline, they saw a Buick occupied by two white males, identified at trial as the defendants, cross Olive and stop in front of a house at the corner of Lowerline and Olive. The officers observed a black male leave the front of the house and approach the driver's side of the Buick. Recognizing this behavior as consistent with narcotics transactions, the officers drove around the block, then stopped to observe the men. At that time, they saw another black male walk to the passenger side of the vehicle. Both of the black males were leaning *549 into the car; the officers could not see whether any objects or currency were exchanged. Nevertheless, because their observations were consistent with narcotics activities, the officers decided to stop the Buick. The officers drove a short distance away so as to be in position to stop the car; however, before they could do so, the defendants drove the Buick into a parking lot of an abandoned building and stopped. The officers parked nearby, approached the defendants' car on foot, and saw the two defendants "loading" crack pipes with apparent rocks of cocaine. The defendants were ordered out of the car and immediately placed under arrest. The officers seized the two crack pipes and several pieces of crack cocaine from the seat of the car.
At trial, Officer Edgar Dunn testified that the rock-like material tested positive for cocaine. Furthermore, tests on the residue seen in the crack pipes were positive for cocaine.
The defense presented two witnesses at trial. Rhett Butler testified that he was the owner of a maroon Buick Skylark which he loaned to Corey Esquerre on the morning of the defendant's arrest. Esquerre had asked for use of the vehicle to pick up some building materials. According to Butler, when he located his vehicle later that day, it was parked in the middle of the street, not in a parking lot, and had been ransacked although it was still locked. Michelle Smith, sister of the defendant Richard Smith, testified that she asked her brother to pick up some building materials for her from Duffy's Lumber. He indicated he would do so if he could obtain transportation. Officer O'Neal testified that Duffy's Lumber is located a few blocks from where the defendants were arrested.

ERRORS PATENT
A review for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1[1]
The defendants argue that the trial court erred when it denied the motion to suppress evidence because the officers lacked reasonable suspicion to make an investigatory stop of the defendants. The State counters that, in fact, the defendants had stopped their vehicle without any action by the police officers. Furthermore, the officers, without intruding into a "protected area", saw the defendants in possession of contraband in plain view.
In order for an object to be lawfully seized pursuant to the "plain view" exception to the Fourth Amendment, "(1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband." State v. Hernandez, 410 So.2d 1381, 1383 (La.1982); State v. Tate, 623 So.2d 908, 917 (La.App. 4 Cir.), writ denied 629 So.2d 1126 and 1140 (La.1993). In Tate, this court further noted: "In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found "inadvertently" in order to fall within this exception to the warrant requirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently." Tate at 917.
Officer O'Neal's testimony at the motion to suppress hearing, which was substantially the same as the trial testimony he and Officer Montalbano gave,[2] established that their suspicions were aroused by the defendants' actions because they were white, in a predominantly black neighborhood, at an intersection known for narcotics activity. An officer's experience, knowledge of recent criminal patterns, and knowledge of a given area's frequent incidence of crimes are factors which may support reasonable suspicion to conduct an investigatory stop. State v. *550 Pautard, 485 So.2d 909, 911 (La.1986) Those suspicions were confirmed by the actions of the two black males who approached the defendants' vehicle and leaned into it. Such actions in a known drug trafficking area may excite the reasonable suspicions of experienced law enforcement officers, in spite of the fact that the officers may not specifically see the exchange of money and drugs. Cf. State v. Barrow, 564 So.2d 365 (La.App. 5 Cir.1990). However, the officers in the instant case did not stop the defendants' vehicle as they intended to do. Instead, the defendants parked their vehicle in a parking lot of an abandoned building. The officers approached the car, on foot, and could clearly observe the defendants placing cocaine into their crack pipes. At no time had the officers intruded into a protected area; what they observed could have been observed by any member of the public. Furthermore, based upon their experience, the officers immediately recognized that the defendants were preparing to smoke the crack cocaine they had apparently just purchased. At that point, there was probable cause to arrest the defendants and seize the contraband.
In any event, under facts almost identical to those in the instant case, in State v. Albert, 553 So.2d 967 (La.App. 4 Cir.1989), this Court found that the police officers had reasonable cause to conduct an investigatory stop of two men seated inside a parked car. Reasonable cause for an investigatory stop is something less than the probable cause required for an arrest and must be determined under the facts of each case. Id., 553 So.2d at 970. A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Curtis, 96-1408 (La.App. 4 Cir.1996), 681 So.2d 1287; State v. Richardson, 575 So.2d 421 (La.App. 4 Cir.), writ denied 578 So.2d 131 (La.1991). In the instant case, the officers in their testimony as described previously articulated knowledge of particular facts sufficient to justify both a stop and/or an arrest. A policeman with sound judgment based on long experience may have justifiable reasons to be suspicious arising out of observations which might seem unexceptional to the ordinary person. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. Deference should be given to the experience of the policemen who were present at the time of the incident. Id.
In Albert, as the officers approached the stopped car, they noticed the subject in the driver's seat attempt to light a rock-like substance. Upon seeing the officers, the subject immediately placed the substance in his mouth. This Court concluded that these circumstances presented a sufficient basis to suspect the subject of attempting to smoke crack cocaine and a sufficiently reasonable basis to justify the investigatory stop. The Court also stated: "Once the vehicle was lawfully detained, for safety reasons the police officers could order the occupants out of the vehicle without violating the Fourth Amendment." Albert, 553 So.2d at 970. An officer should react for his safety under the conditions and events as they occur. Short, 694 So.2d at 552.
Here, the defendants were not "stopped" until after they were observed engaging in the commission of a crime, preparing to smoke crack cocaine. The officers had not intruded into a protected area at the time they observed the actions of the defendants. The evidence seized was observed in plain view. Regardless, a search of the interior of the automobile is permitted incident to an arrest when the defendants remain in proximity to the automobile as they did in the instant case. State v. Alaimo, 95-1044, p. 3 (La.App. 4 Cir. 6/29/95); 657 So.2d 1102, 1104. The trial court correctly denied the motion to suppress evidence.
This assignment of error has no merit.

*551 ASSIGNMENT OF ERROR NUMBER 2

Appellant Corey Esquerre assigns a second error, to wit, that the trial court erred in finding him to be a second offender. He argues that the State submitted certified copies of the bill of information, docket master, and plea of guilty form from case number 92-4086 in Jefferson Parish but that it failed to provide a transcript of the guilty plea. He avers that the evidence was insufficient without the colloquy.
But the defendant failed to preserve this issue for appellate review because he did not file a written response to the habitual offender bill of information. State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72; La. R.S. 15:529.1(D)(1)(b).
The record contains no written response to the multiple bill, and there was no oral objection made at the multiple bill hearing to the use of the prior conviction. Therefore, appellate review of whether defendant was properly Boykinized on the prior conviction is precluded. This assignment of error is without merit.
Accordingly the defendants' convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The appellant Esquerre adopts the argument found in the brief filed on behalf of Richard Smith.
[2] In reviewing a ruling on a motion to suppress, this court may consider not only the evidence presented at the motion hearing, but also evidence adduced at trial. State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Vaughn, 378 So.2d 905 (La.1979).